IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| REALTIME ADAPTIVE STREAMING LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | C.A. No. 17-1692 (JFB) (SRF) |
| NETFLIX, INC. and NETFLIX STREAMING SERVICES, INC., | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR
MOTION TO DISMISS COMPLAINT**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendants*

OF COUNSEL:

Katherine Vidal
Matthew R. McCullough
Winston & Strawn LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025
(650) 858-6500

Andrew B. Grossman
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
(213) 615-1700

February 5, 2018

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDING........................................................1

SUMMARY OF THE ARGUMENT ...........................................................................1

STATEMENT OF FACTS ..........................................................................................2

LEGAL STANDARDS ...............................................................................................3

        A.      Rule 12(b)(6)........................................................................3

        B.      Section 101 Eligibility .........................................................4

ARGUMENT ..............................................................................................................6

I.       THE FALLON PATENTS' CLAIMS ARE PATENT-INELIGIBLE ............................6

        A.      The '535 Patent Claims Are Patent-Ineligible Under Section 101...........7

        B.      The '477 Patent Claims Are Patent-Ineligible Under Section 101.........11

        C.      The '907 Patent Claims Are Patent-Ineligible Under Section 101.........13

        D.      The '046 Patent Claims Are Patent-Ineligible Under Section 101.........14

II.      REALTIME FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS INFRINGEMENT CLAIMS ................................15

III.    PLAINTIFF FAILS TO PROPERLY PLEAD INFRINGEMENT OF THE '462 AND '298 PATENTS.........................................18

        A.      Realtime Fails to Plausibly Allege Infringement of the '462 Patent.........18

        B.      Realtime Fails to Plausibly Allege Infringement of the '298 Patent.........19

IV.    PLAINTIFF FAILS TO PROPERLY PLEAD INDIRECT INFRINGEMENT.........................................20

CONCLUSION..........................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) .......................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .......................................................................... 1, 4, 15-16

*Bay Indus., Inc. v. Tru-Arx Manuf., LLC*,
  No. 06-1010, 2006 WL 3469599 (E.D. Wis. Nov. 29, 2006) ...................... 18

*Becton, Dickinson & Co. v. Baxter Int'l, Inc.*,
  127 F. Supp. 3d 687 (W.D. Tex. 2015), *aff'd*, 639 F. App'x 652 (Fed. Cir.
  2016) .......................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .......................................................................... 4, 16

*Bilski v. Kappos*,
  561 U.S. 593 (2010) .......................................................................... 5

*Conley v. Gibson*,
  355 U.S. 41 (1957) .......................................................................... 16

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) .......................................................................... 4

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010) .......................................................................... 18-19

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754 (2011) .......................................................................... 20

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) .......................................................................... 17

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) (*en banc*), *aff'd*, 561 U.S. 593 (2010) ............ 4

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) .......................................................................... 8

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) .......................................................................... 6

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017) .......................................................................... 5

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
   2017 WL 3315279 (D. Del. Aug. 3, 2017)                                      4

*Modern Telecom Sys., LLC v. TCL Corp*.,
   C.A. No. 17-583-LPS-CJB, 2017 WL 6524526 (D. Del. Dec. 21, 2017)           16

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015)                                            10

*Planet Bingo, LLC v VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014)                                         9

*Raindance Techs., Inc. v. 10x Genomics, Inc.*,
   C.A. No. 15-152-RGA, 2016 WL 927143 (D. Del. Mar. 4, 2016)                 16

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)                                        *passim*

*Smartgene, Inc. v. Advanced Biological Labs., SA*,
   555 F. App'x 950 (Fed. Cir. 2014)                                        8-9

*Stragent, LLC v. BMW of N. Am., LLC*,
   2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)                               18, 20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)                                          5, 10

**Statutes and Rules**

35 U.S.C. § 101                                                          *passim*

Fed. R. Civ. P. 8                                                             15

Fed. R. Civ. P. 12(b)(6)                                                     3-4

## NATURE AND STAGE OF THE PROCEEDING

Plaintiff Realtime Adaptive Streaming LLC ("Realtime") has sued Netflix, Inc. and Netflix Streaming Services, Inc. (collectively, "Netflix"), alleging infringement of U.S. Patent Nos. 8,934,535 ("the '535 patent"), 9,769,477 ("the '477 patent"), 9,762,907 ("the '907 patent"), 7,386,046 ("the '046 patent"), 8,634,462 ("the '462 patent"), and 9,578,298 ("the '298 patent") (the "asserted patents"). *See* D.I. 1. Netflix has moved to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## SUMMARY OF THE ARGUMENT

(1) The four substantially identical Fallon patents ('535, '477, '907, and '046 patents) asserted in this matter are all related purport to claim the concept of encoding and decoding data—acknowledged by the Federal Circuit as a concept as old as communication itself—and are unpatentable under 35 U.S.C. § 101. "Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's 'one if by land, two if by sea' signaling system all exemplify encoding at one end and decoding at the other end." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017). The well-known techniques for encoding and decoding claimed in the Fallon patents are performed by conventional computers and network technology, so those elements do not save the claims under 35 U.S.C. § 101. *See, e.g.*, *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2356 (2014). The claims do not contain any inventive concept that transforms the claimed abstract idea—of selecting an encoder and then encoding the data—into patent-eligible subject matter.

(2) Realtime also fails to properly allege infringement for any of the six asserted patents. Instead, it accuses numerous different products, which the Complaint acknowledges operate differently, and fails to state a plausible claim that each of these various products infringes. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1

(3) Finally, Realtime alleges, but fails to sufficiently plead, induced and contributory infringement for any of the asserted patents:  the Complaint does not contain a single fact showing that Netflix knew any of the patents prior to this lawsuit.  For this reason, the Court should dismiss Realtime's allegations of pre-suit induced and contributory infringement.

## STATEMENT OF FACTS

Realtime has asserted six patents, all of which relate to the concept of encoding data.  The Fallon patents describe compression as a technique utilized to encode and decode data recited in the claims.  '535 patent at 2:47-49 ("data compression techniques . . . may be utilized . . . to encode/decode data").  Encoding is the process of substituting one way of representing data with another.  For example, Morse code encodes the letters of the alphabet with dots and dashes that could be transmitted on a telegraph or via radio:

| 1.1.1 | Letters | | | | | | |
|---|---|---|---|---|---|---|---|
| | a | .− | i | .. | r | .−. |
| | b | −... | j | .−−− | s | ... |
| | c | −.−. | k | −.− | t | − |
| | d | −.. | l | .−.. | u | ..− |
| | e | . | m | −− | v | ...− |
| accented | e | ..−.. | n | −. | w | .−− |
| | f | ..−. | o | −−− | x | −..− |
| | g | −−. | p | .−−. | y | −.−− |
| | h | .... | q | −−.− | z | −−.. |

According to the Federal Circuit, Morse code "exemplif[ies] encoding at one end and decoding at the other end."  *RecogniCorp*, 855 F.3d at 1326.  Every day, people perform encoding in their head or via pencil-and-paper with ease.  For example, teenagers abbreviate text messages, using a variety of techniques such as acronyms (LOL, JK, OMG), homonyms (gr8, U), or "emojis" (☺).  Throughout this brief, attorneys use encoding to represent various case citations in Bluebook form (e.g., "F.3d," "U.S.," "*Id.*").

Compression is the process of using an encoding system to reduce the size of data.  The

Fallon patents acknowledge that compression was well-known at the time of the purported inventions: "[t]here are a variety of data compression algorithms that are currently available." '535 patent at 1:31-32.  They also recognize that using compression to process and transmit data was well-known: "[d]ata compression is widely used to reduce the amount of data required to process, transmit, or store a given quantity of information."  *Id.* at 2:44-46.

The Fallon patents ('535, '477, '442, and '907 patents) are all related, share a common specification, and share the same two inventors.  The Fallon patents relate to the abstract idea of selecting an encoder (or a type of encoder called a compressor) based on some parameter and then encoding data.  For each of the Fallon patents, Realtime identifies a single claim in the Complaint as allegedly infringed.  This motion focuses on a single claim from each patent because the other claims add only minor variations to the same basic idea of selecting a compressor based on some characteristic of the data to be compressed.  Realtime concedes that these claims are representative, generally alleging that Netflix infringes additional claims in each Fallon '535 patent "for similar reasons."  D.I. 1, ¶ 69 ('535 patent), 107 ('477 patent), 88 (p. 55)[1] ('907 patent), and 26 ('046 patent).

For each of the Fallon patents, Realtime alleges infringement based on the H.264 video encoding standard.  *See generally* D.I. 1, Counts I, III, V, VI.  For the unrelated '462 and '298 patents, Realtime alleges infringement based on the H.265 (HEVC) video encoding standard. *See generally id.*, Counts II & IV.

## LEGAL STANDARDS

### A.      Rule 12(b)(6)

Stating  a  claim  upon  which  relief  may  be  granted  "requires  more  than  labels  and

---

[1] The Complaint repeats numbers 77-95 so that, *e.g.*, there are two paragraphs 88.  For clarity, Netflix will also include the page number when citing to any of these mis-numbered paragraphs.

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). To survive a Rule 12(b)(6) motion, a complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. Although factual allegations are taken as true, legal conclusions are given no deference—those matters are left for the court to decide. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that while factual allegations are taken as true, this assumption "is inapplicable to legal conclusions.").

### B.     Section 101 Eligibility

Section 101 of the Patent Act defines the type of subject matter that is patent-eligible. Whether a patent claims patent-eligible subject matter is "a threshold inquiry." *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008) (*en banc*), *aff'd*, 561 U.S. 593 (2010); *Mayo*, 132 S. Ct. at 1304. Section 101 is a question of law, *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012), that may properly be addressed on a motion to dismiss. *See, e.g.*, *Jedi Techs., Inc. v. Spark Networks, Inc.*, 2017 WL 3315279, at *6, *11 (D. Del. Aug. 3, 2017).

The statute provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. For over 150 years, the Supreme Court has applied "an important implicit exception" to Section 101's seemingly wide breadth: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

In *Alice*, 134 S. Ct. 2347, the Supreme Court confirmed that, in light of "the ubiquity of computers," claiming a "wholly generic computer implementation" of an abstract concept is insufficient to transform the concept into a patent-eligible invention. *Id.* at 2358.

*Alice* articulates a two-step framework for determining whether a patent claims patent-ineligible abstract ideas. In step one, the court must determine whether the claims are directed to

a patent-ineligible abstract concept. *Alice*, 134 S. Ct. at 2355.  To determine whether the claim is "directed to" an abstract idea, the court must determine the "focus of the claimed advance over the prior art"—that is, what is the "character [of the claim] as a whole." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017).  Where the "character of the claim" pertains to standard encoding and decoding, the claim is directed to an abstract idea and fails *Alice* step 1. *See RecogniCorp*, 855 F.3d at 1326.

If the claim is directed to an abstract idea, the court proceeds to step two. In step two, the court must search for an "inventive concept"—i.e., "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"[2] *Alice*, 134 S. Ct. at 2355 (alteration in original).  To save a patent at step two, the inventive concept "must be evident in the claims." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338-39 (Fed. Cir. 2017) ("[t]he main problem that [plaintiff] cannot overcome is that the ***claim***—as opposed to something purportedly described in the specification—is missing an inventive concept") (emphasis in original).  A patentee cannot circumvent the prohibition on patenting abstract ideas by limiting the idea to "a particular technological environment," nor by adding "insignificant postsolution activity," *Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (internal quotation marks omitted) or "well-understood, routine, conventional" features, *Mayo*, 566 U.S. at 79–80.  Importantly, "the mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible

---

[2] "Where claims are 'substantially similar and linked to the same abstract idea,' the court may dispose of the other claims in the patent with less detail." *Becton, Dickinson & Co. v. Baxter Int'l, Inc.*, 127 F. Supp. 3d 687, 689 n.3 (W.D. Tex. 2015), *aff'd*, 639 F. App'x 652 (Fed. Cir. 2016); *see also Bilski v. Kappos*, 561 U.S. 593, 612 (2010). Here, Realtime acknowledges that the identified claims are representative of the other claims in each patent. D.I. 1, ¶¶ 26, 69, 88 (p. 55), 107 (alleging other claims are infringed "for similar reasons").

invention." *Alice*, 134 S. Ct. at 2358.

The Federal Circuit recently applied these principles to claims directed to the same purported invention claimed in the patents-in-suit—encoding and decoding data—and found them patent-ineligible:

> We find that ***claim 1 is directed to the abstract idea of encoding and decoding image data***. It claims a method whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes. ***This method reflects standard encoding and decoding, an abstract concept long utilized to transmit information***. *Cf. Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017) (organizing, displaying, and manipulating data encoded for human- and machine-readability is directed to an abstract concept). Morse code, ordering food at a fast food restaurant via a numbering system, and Paul Revere's "one if by land, two if by sea" signaling system all exemplify encoding at one end and decoding at the other end.

*RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (emphasis added).

## ARGUMENT

## I. THE CLAIMS OF THE FALLON PATENTS ARE PATENT-INELIGIBLE

Each of the Fallon patent claims is patent-ineligible because it is directed to the abstract idea of encoding and decoding data and lacks any inventive concept. In *RecogniCorp*, the Federal Circuit considered a representative claim reciting "facial feature images [that] are associated with facial feature element codes," then making a "composite facial image code . . . by performing at least one multiplication operation . . . using one or more code factors as input parameters," and finally "reproducing the composite image . . . based on the composite facial image code." *Id.* at 1324 (emphasis added). As the Federal Circuit explained, this claim recites a method "whereby a user displays images on a first display, assigns image codes to the images through an interface using a mathematical formula, and then reproduces the image based on the codes." *Id.* This method "reflects standard encoding and decoding, an abstract concept long utilized to transmit information." *Id.* at 1326. The Court expressly rejected the notion that

encoding data "improves the functioning of a computer," stating that the claims at issue recite "a process that qualifies as an abstract idea for which computers are invoked merely as a tool." *Id.* at 1327 (internal quotations omitted).  The claims-at-issue here are no different.

Under *Alice* step two, the Federal Circuit held that the *RecogniCorp* claims lacked an inventive concept.  In doing so, the Federal Circuit rejected the patentee's argument that "the particular encoding process using the specific algorithm disclosed" could constitute an inventive concept.  *RecogniCorp*, 855 F.3d at 1327   The Federal Circuit also held that the claims did not solve a unique computer-specific problem:

> Claim 1 . . . contains no similar inventive concept. . . . A claim directed to an abstract idea does not automatically become eligible merely by adding a mathematical formula.  As we explained above, claim 1 is directed to the abstract idea of encoding and decoding. The addition of a mathematical equation that simply changes the data into other forms of data cannot save it.

*Id.* at 1327-28.  The Federal Circuit further noted that certain claims requiring a computer "do[] exactly what we have warned it may not: tell a user to take an abstract idea and apply it with a computer."  *Id.* at 1328.

This type of encoding and decoding is precisely what Realtime claims in this case: as detailed below, the Fallon patents are directed to nothing more than the patent-ineligible concept of encoding data for transmission and are similarly patent-ineligible.  Realtime's claims recite an abstract process that starts with data, adds an algorithm, and ends with a new form of data.  They do not solve any unique computer-specific problem, nor do they involve any other inventive concept that might elevate them to patentable subject matter.  The Fallon claims recite nothing more than instructions to perform the abstract idea on generic computer hardware.   Because the claims do not recite any inventive concept, Realtime's claims are patent-ineligible.

### A.    The '535 Patent Claims Are Patent-Ineligible Under Section 101

*Alice* **Step One**: The '535 patent claims are directed to the abstract idea of encoding data

based on "a parameter" of that data.  Claim 15, asserted in the Complaint and representative for purposes of the Section 101 analysis, recites (emphasis added):

> 15. A method, comprising:
>
> ***determining a parameter*** of at least a portion of a data block;
>
> ***selecting one or more asymmetric compressors*** from among a plurality of compressors ***based upon the determined parameter or attribute***;
>
> ***compressing*** the at least the portion of the data block with the selected one or more asymmetric compressors ***to provide one or more compressed data blocks***; and
>
> ***storing*** at least a portion of the one or more compressed ***data blocks***.

The four method steps recite the abstract concept of: (1) determining a parameter of the data; (2) selecting a method of encoding[3] the data based on the determined parameter; (3) performing the task of encoding the data; and (4) storing the data.

These steps are basic computer functionality that has been found patent-ineligible.  *See RecogniCorp*, 855 F.3d at 1327 (discussed above); *Context Extraction*, 776 F.3d at 1347 (claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in memory" are patent-ineligible); *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 611 (Fed. Cir. 2016).

Similarly, the Federal Circuit has found abstract claims that recited a computing device with "expert rules for evaluating and selecting" one of different treatment regimens.  *Smartgene, Inc. v. Advanced Biological Labs., SA*, 555 F. App'x 950, 955 (Fed. Cir. 2014).  There, the Federal Circuit explained that such a claim was like the ineligible claim in *Benson* because it "'can be . . . performed without a computer' or, alternatively, 'can be carried out in existing

---

[3] According to the '535 patent, "compression" (*e.g.*, as recited by claim 15) is merely a known way of "encoding" data.  '535 patent at 2:47-49 ("In general, there are two types of data compression techniques that may be utilized either separately or jointly to encode/decode data").

computers long in use, no new machinery being necessary.'" *Id*.  So too here, the '535 patent claims reciting selection of a compressor from a plurality of compressors can be done, and the claims do not purport to claim any new, unconventional hardware or software for doing this routine selection.  Indeed, in *RecogniCorp*, the claims also recited steps involving a selection ("selecting a facial feature image") and the use of parameters ("performing at least one multiplication operation on a facial code using one or more code factors as input parameters"), but were nonetheless held to be directed at an abstract idea.  *RecogniCorp*, 855 F.3d at 1324.

The remaining claims provide only slight variations on Claim 15, and fail to disclose anything more than abstract, unpatentable ideas.  *See*, *e.g.*, *Planet Bingo, LLC v VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014).  For example, certain claims (e.g., '535 claims 1, 22, 27) are limited to video or audio data but limiting the type of data encoded does not elevate the patent to claiming something more than an abstract idea.  *See RecogniCorp*, 855 F.3d at 1326 (encoding "image data" was abstract).  Other claims (e.g., '535 claims 7, 13, 17, 19-21, 23, 29) recite transmitting the data (sometimes explicitly claimed as "over the Internet"), but the transmission process relies on conventional computer elements and thus does not add any patentable subject matter to the base abstract idea.  *See Ultramercial*, 772 F.3d at 716 ("[T]he use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101.").  Still other claims (e.g., '535 claims 7, 13-14, 23, 25-26) recite decompressing data, but this is simply the reverse of the encoding process and is likewise abstract under *RecogniCorp*.  Still other claims (e.g., '535 claims 3-5, 11) recite the use of computer "files," which are conventional computer elements that do not change the abstract nature of the claims.

*__Alice__* **Step Two**: The limitations of claim 15 of the '535 patent implement the abstract idea discussed above without any additional inventive concept.  For example, the '535 patent

does not claim any specific improvements to computer systems.  Rather, it claims only the use of known compressors acting on a known type of data to perform the fundamental concept of data encoding by compression.  Moreover, additional claims recite only conventional computer components that perform data encoding by compression using known methods.  *See, e.g.*, claims 18 and 30 reciting, "one or more central processing units (CPUs)."

None of the individual claim elements that implement use of a selected compression technique is a technological innovation.  In fact, the specification emphasizes their conventional nature.  For example, the patent states that the purported invention is implemented using *existing* compression algorithms on *existing* hardware, software, firmware, or a combination thereof. *E.g.*, '535 patent at 20:1-4 ("the systems and methods described herein may be implemented in various forms of hardware, software, firmware, special purpose processors, or a combination thereof").  Under *Alice*, a truly patent-eligible invention requires more.

Further confirming that the claim elements are not inventive is that a human can analyze[4] data types and make determinations about the most appropriate compression technique based on the type of data to be compressed or the bandwidth available.  There is nothing inventive about using a computer to do more quickly or efficiently what a human could otherwise accomplish because "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render a claim patent eligible." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015).

---

[4] To the extent Realtime argues there is something computer-specific about the data upon which its claims operate, that argument has no merit.  The inventive concept must be in the claims, not the specification. *Two-Way Media*, 874 F.3d at 1338-39.  Additionally, the *RecogniCorp* claims addressed "image" data, which is an example of "digital" data but the Federal Circuit nevertheless found those claims unpatentable. *RecogniCorp*, 855 F.3d at 1326.

In sum, the claim limitations (both alone and as an ordered[5] combination) are directed to routine data manipulation using conventional compression techniques to encode data for storage. *Alice*, 134 S. Ct. at 2360 ("[T]he claims at issue amount to 'nothing significantly more' than an instruction to apply the abstract idea . . . using some unspecified, generic computer.  Under our precedents, that is not 'enough' to transform an abstract idea into a patent eligible invention."); *RecogniCorp*, 855 F.3d at 1328.  Accordingly, the '535 patent claims are patent-ineligible.

**B.      The '477 Patent Claims Are Patent-Ineligible Under Section 101**

*Alice* **Step One**: Similar to the '535 patent, the claims of the '477 patent are directed to the abstract idea of encoding data by compression and lack any inventive concept.  Claim 1, asserted in the Complaint and representative for the 101 analysis, recites (emphasis added):

1. A system, comprising:

*a plurality of* different asymmetric data compression *encoders*,

wherein *each* asymmetric data compression *encoder* of the plurality of different asymmetric data compression encoders *is configured to utilize one or more data compression algorithms*, and

*wherein a first asymmetric data compression encoder* of the plurality of different asymmetric data compression encoders *is configured to compress* data blocks containing *video or image data at a higher data compression rate than a second asymmetric data compression encoder* of the plurality of different asymmetric data compression encoders; and

one or more *processors configured to*:

determine one or more data parameters, *at least one* of the determined one or more data parameters *relating to a throughput* of a communications channel measured in bits per second; and

---

[5] The "order" of the claims adds nothing to patentability.  Of course, one could not "select[] one or asymmetric compressors . . . based upon the determined parameter" until after one had "determin[ed] a parameter."  Likewise, one could not "stor[e]" the compressed data blocks until they had been created.  Ordering the claims this way recites nothing more than the conventional operation of the abstract idea of encoding data.

> ***select one or more asymmetric data compression encoders*** from among the plurality of different asymmetric data compression encoders ***based upon, at least in part, the determined one or more data parameters***.

This claim is similar to '535 patent claim 15, discussed above, in that it is directed to a system for implementing the abstract idea of determining a parameter, selecting an encoder, and encoding data. The only difference is that claim 1 of the '477 patent recites that at least one of the parameters is a throughput (i.e., bandwidth ('477 patent, 11:43-44) or the rate at which the data can be transmitted) of the communications channel. This difference does not save the claims from patent ineligibility. *Alice*, 134 S. Ct. at 2358 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of [the idea] to a particular technological environment").

The other claims of the '477 patent, which contain only minor variations from claim 1, are likewise abstract. Numerous claims attempt to restrict the encoding algorithm used (e.g., '477 claims 2, 5-6, 10-12, 20, 22, 26) or the parameter (e.g., '477 claims 3-4, 7-9, 17, 20-21, 23-25) -- yet another instance of trying to limit a claim to a "particular technological environment," which cannot save a claim. *Alice*, 134 S. Ct. at 2358. Other claims are restricted to using a particular type of network, such as the Internet (e.g., '477 claims 13-14, 27); this also does not affect the Section 101 analysis. *Ultramercial*, 772 F.3d at 716. Some claims add the idea of adding a "descriptor" (e.g., '477 claims 15-16, 28), which is just another word for the abstract idea of adding a label to the data. And other claims (e.g., '477 claim 19) recite "storing" data, which is a conventional computer operation that does not change the abstractness analysis, for the reasons explained above in relation to the '535 patent claims.

***Alice* Step Two**: The '477 patent also fails *Alice* step two for the same reasons set forth above for the '535 patent. The only computer or physical elements mentioned in any '477 patent claims are "processors" ('477 claims 1, 20) and "a memory" ('477 claim 19), both well-known

conventional computer elements.   As with the '535 patent, no claim language restricts the abstract idea to any particular physical application or implementation.   The mere recitation of these conventional computer elements fails to provide the required inventive concept.

### C.   The '907 Patent Claims Are Patent-Ineligible Under Section 101

***Alice* Step One**: Exemplary claim 1 of the '907 patent is also directed to the abstract idea of encoding data using compression based on a parameter or on throughput.   Claim 1, asserted in the Complaint and representative for the Section 101 analysis, recites (emphasis added):

> 1. A system comprising:
>
> ***one or more different asymmetric data compression algorithms***, ***wherein each algorithm*** of the one or more different asymmetric data compression algorithms ***utilizes one or more asymmetric data compression routines*** of a plurality of different asymmetric data compression routines, ***wherein a first asymmetric data compression routine*** of the plurality of different asymmetric data compression routines ***is configured to produce compressed data with a higher data rate for a given data throughput than a second asymmetric data compression routine*** of the plurality of different asymmetric data compression routines; and
>
> a ***processor configured***:
>
>> ***to analyze one or more data parameters from one or more data blocks*** containing video data, wherein ***at least one data parameter relates to an expected or anticipated throughput*** of a communications channel; and
>
>> to ***select two or more different data compression routines*** from among a plurality of different data compression routines ***based upon, at least in part, the one or more data parameters relating to the expected or anticipated throughput*** of the communications channel.

Claim 1 is similar to the '535 and '477 patent claims, also directed to the abstract ideas of determining a parameter, selecting an encoder, and encoding data.   As with the '477 patent, claim 1 attempts to limit the claim to the "particular technological environment" of using a parameter relating to a throughput, which does not make it any less abstract.   *Alice*, 134 S. Ct. at 2358.   It further recites that one of the two compression routines compresses to a higher data rate.   But that cannot save the claim.   *Id.*   Finally, claim 1 recites selecting two different data

compression routines.  But performing the abstract idea of encoding twice is just as abstract as performing that abstract idea once.

The dependent claims add minor variations which do not change the abstract nature of the claims.  For example, the dependent claims attempt to limit the type of compression algorithm (e.g., '907 claims 3-4, 7-9), the parameter (e.g., '907 claims 6, 14), the data itself (e.g., '907 claim 5), or the communications channel used (e.g., '907 claims 10-11).  Other claims add a "descriptor" (e.g., '907 claims 12-13), as did certain claims of the '477 patent.  In total, these dependent claims do not meaningfully change the abstract idea—trying to limit the claims to "particular technological environments" does not provide a defense under Section 101.

*Alice* **Step Two**: The '907 patent fails *Alice* step two for the same reasons set forth above.  The only computer or physical elements mentioned in any '907 patent claims is a "processor" (claim 1).  The claim language does not restrict the abstract idea to any physical application or implementation that could constitute an inventive step.

### D.     The '046 Patent Claims Are Patent-Ineligible Under Section 101

*Alice* **Step One**: As with the other Fallon patents, exemplary claim 1 of the '046 patent is directed to the abstract idea of compressing data based on throughput.  Claim 1, asserted in the Complaint and representative for the Section 101 analysis, recites (emphasis added):

1. A method comprising:

***compressing data using a first compression routine providing a first compression rate***, wherein the first compression routine comprises a first compression algorithm;

***tracking the throughput of a data processing system to determine if the first compression rate provides a throughput that meets a predetermined throughput threshold***, wherein said tracking throughput comprises tracking a number of pending requests for data transmission; and

***when the tracked throughput does not meet the predetermined throughput threshold, compressing data using a second compression routine providing a***

14

> ***second compression rate that is greater than the first compression rate***, to increase the throughput of the data processing system to at least the predetermined throughput level, wherein the second compression routine comprises a second compression algorithm.

Claim 1 is similar to the other Fallon patents, and is also directed to the abstract ideas of using throughput to select an encoder and encoding data. As noted above, the recitation of throughput merely attempts to limit the claim to a "particular technological environment," which does not make it any less abstract. *Alice*, 134 S. Ct. at 2358. The claim also recites "tracking" throughput, and then changing which compression routine based on that throughput, but tracking or observation is a fundamentally abstract behavior that could be performed by a human.

The other claims of the '046 patent add minor variations which do not change the abstract nature of the claims. For example, other claims recite known types of data (e.g., '046 claims 3-4, 6-7, 9-10, 12-13, 15-16, 20-21) or attempt to limit the type of compression algorithm used (e.g., '046 claims 2, 5, 11, 33-36). In total, these dependent claims do not meaningfully change the abstract idea—trying to limit the claims to "particular technological environments" does not save these claims under Section 101.

***Alice* Step Two**: The only computer or physical elements mentioned in any '046 patent claims are generic, conventional hardware such as a "data processing system" ('046 claims 1, 5, 8, 11, 14, 17-19, 27, 34, 38-39, 41) or a "storage device" ('046 claims 18, 22, 25, 28, 37-41). As with the other Fallon patents, the claim language does not restrict the abstract idea to any physical application or implementation or otherwise provide anything that could constitute an inventive step under *Alice* step two.

## II.   REALTIME FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT ITS INFRINGEMENT CLAIMS

Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal,* 556 U.S. at 678. Rather, it requires "fair notice of what the . . . claim is and

the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citing

*Conley v. Gibson*, 355 U.S. 41, 47 (1957)).   To assert a claim with "facial plausibility," a

plaintiff must plead "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   "The plausibility

standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

None of the claims in Realtime's Complaint comply with these requirements, and

therefore all claims should be dismissed.   The claims do not point to the actual operation of any

Netflix products.   Instead, the Complaint alleges infringement by parroting the claim language

and providing "examples" of several distinct, broadly-defined standardized technologies while

artfully omitting sufficient factual content to support the legal conclusion of infringement.

Complaint, ¶¶ 16, 35, 59, 78 (p. 38), 78 (p. 46), 97.   *Raindance Techs., Inc. v. 10x Genomics,*

*Inc.*, C.A. No. 15-152-RGA, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016);   *Modern Telecom*

*Sys., LLC v. TCL Corp.*, C.A. No. 17-583-LPS-CJB, 2017 WL 6524526, at *2 (D. Del. Dec. 21,

2017) Realtime compounds the factual deficiencies in its Complaint by stating ***without any***

***supporting facts*** that each of the Accused Instrumentalities – including several ***different***

***technical standards*** – "perform[s] the claimed methods in substantially the same way" as an

exemplary accused standard (either H.264 or H.265).   Complaint, ¶¶ 27, 51, 70, 89, 108 (Count

V, p. 55), 108 (Count VI, p. 67).   Realtime makes this allegation even though, for each asserted

patent, it also states that the accused products include at least ***three product categories and ten***

***products***: "**[1][a]** Netflix's streaming video service; **[2]** Netflix's video encoders or codecs

including **[a]** x264, **[b]** x265 and **[c]** libvpx; and **[3]** Netflix's mobile encoders, encoders or

codecs including **[a]** AVCMain (H.264/AVC Main), **[b]** H.264/AVC High, **[c]** VP9, **[d]** AVCHi-

Mobile and **[e]** VP9-Mobile, and all versions and variations thereof since the issuance of the

[asserted patent] ("Accused Instrumentalities") (reference numbers and letters added).   D.I. 1, ¶¶ 16, 35, 59, 78 (p. 38), 78 (p. 46), 97.   For the '462 and '298 patents, Realtime further alleges infringement by the "**[3][f]** H.265/HEVC" mobile encoders, encoders, or codecs.   *Id.*, ¶¶ 35, 78 (p. 38) (reference numbers and letters added).

Realtime acknowledges that the "Accused Instrumentalities" encompass different technologies and different functionality.   *See e.g.,* Complaint at ¶ 100 (alleging a Netflix blog describing "a test comparing several ***different encoders***" including several of the "Accused Instrumentalities") (emphasis added); *see also* Complaint at ¶ 18 ("This [H.264] isn't quite as effective as using VP9.").   Yet, Realtime contradicts itself by also alleging that "all of the Accused Instrumentalities perform the claimed methods in substantially the same way."  Complaint, ¶¶ 27, 51, 70, 89, 108 (Count V, p. 55), 108 (Count VI, p. 67).   *See In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1338 (Fed. Cir. 2012).

Such vague and contradictory allegations, devoid of even a sprinkling of factual content, cannot raise a right to relief above the speculative level, and are insufficient.   Realtime's Complaint leaves Netflix to guess which aspects of multiple, complex technologies allegedly infringe over 140 claims of six patents.   The Complaint does not specifically identify how each accused product allegedly infringes each asserted patent.   Instead, Realtime's Complaint includes conflicting allegations and stitches together disparate third party sources, while carefully avoiding any allegations of ***how*** Netflix infringes the asserted patents.

For example, Realtime identifies mobile encoders including VP9 and VP9-Mobile as Accused Instrumentalities but does not include a single factual allegation explaining how either VP9 or VP9-Mobile allegedly infringes any of the 140   Netflix "should not have to guess which of its products infringe [some or all of over 140 claims in the six asserted patents], nor guess how

its products might fall within plaintiff's interpretation of those claims." *Bay Indus., Inc. v. Tru-Arx Manuf., LLC,* No. 06-1010, 2006 WL 3469599, at *2 (E.D. Wis. Nov. 29, 2006) (granting defendant's motion for a more definite statement).

Because of these failures to sufficiently identify the technology it actually accuses of infringement, Realtime's Complaint should be dismissed.

## III.   PLAINTIFF FAILS TO PROPERLY PLEAD INFRINGEMENT OF THE '462 AND '298 PATENTS

Realtime's infringement allegations for the '462 and '298 patents rely on Netflix's alleged compliance with the standard for High Efficiency Video Coding ("HEVC"), also known as H.265 or MPEG-H Part 2.  None of these allegations, however, relates to Netflix's specific implementation of the standard.  Indeed, Realtime has failed to allege how the standard or Netflix's specific use of the standard necessarily infringes the claims of these patents.

"[A] patentee may rely on standard compliance to show infringement only if the patent covers **every** possible implementation of the standard."  *See Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697, at *6 (E.D. Tex. Mar. 3, 2017).  Moreover, compliance with a standard alone is **not** sufficient to show infringement when "the relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section."  *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010).  In such a case, a patent owner must either "compare the claims to the accused products" or "prove that the accused products implement any relevant optional sections of the standard."  *Id.* at 1328.  Here, Realtime has failed to properly plead either.

### A.      Realtime Fails to Plausibly Allege Infringement of the '462 Patent

The '462 patent requires, *inter alia*, specific steps to be performed by an encoder.  '462 patent, claims 1 & 11.  However, the HEVC standard does not specify any **en**coding algorithms,

as the Complaint concedes: "the coding algorithms than can be used for reaching specific efficiency targets are not specified by the HEVC Spec (as stated in clause 0.7)."  D.I. 1, ¶ 43.  Indeed, the standard itself confirms this point: "[e]ncoding algorithms ([are] not specified in this Recommendation | International Standard)."  Ex. B (HEVC Specification Excerpts) at 2, cl. 0.7.  Instead, the HEVC specification describes only the required operation of the *de*coder.  *Id.*; D.I. 1, ¶ 43 (discussing a "conformant *de*coder") (emphasis added).  Accordingly, compliance with the H.265 standard cannot demonstrate infringement of the '462 patent claims.

Realtime also has failed to allege any facts supporting that the Netflix products ***actually*** implement any of the accused encoder functionality.  Realtime's reliance on an IEEE article (D.I. 1, ¶¶ 38-41) and on "reference software" (D.I. 1, ¶¶ 44-48) cannot save its claim:  Realtime does not—and cannot—allege that the functionalities described in these additional references are required by the HEVC specification or actually implemented in the accused Netflix products.

As such, these pleadings are deficient and the Court should dismiss these claims.

## B.   Realtime Fails to Plausibly Allege Infringement of the '298 Patent

The '298 patent generally relates to decoding 3D video data.  The '298 patent claims require, *inter alia,* "decod[ing] only that part of the composite frame (FC) which contains said one image to be displayed."  '298 patent at claims 1 & 11.  To plead infringement of this limitation, Realtime relies exclusively on the portion of the HEVC specification relating to decoding multiple "tiles".  D.I. 1, ¶ 85 (p. 41).  As the Complaint explains, tiles are "different picture regions" that support "independent decoding."  *Id.*  For example, a picture can be split into multiple separate regions that are called "tiles," and then each of those regions can be decoded separately (e.g., by different processors at the same time).

The HEVC specification, however, explains that tiles are not always used with every HEVC video stream.   Instead, they are only used when a particular variable called

"tiles_enabled_flag" is set equal to 1.  Ex. B at 83 (tiles_enabled_flag "equal to 1 specifies that

there is more than one tile . . . [but] ***equal to 0 specifies that there is only one tile***") (emphasis

added).  Accordingly, Realtime fails to allege that the '298 patent claims cover every possible

implementation of the HEVC standard (including when "tiles_enabled_flag" is set to 0), and

therefore cannot rely on the HEVC specification to allege infringement.  *Stragent*, 2017 WL

2821697, at *6.  Additionally, Realtime never alleges that "tiles_enabled_flag" is actually equal

to 1 in the operation of any Netflix accused product.  *See* D.I. 1, ¶ 85 (p. 41).  Because Realtime

cannot rely on the HEVC specification and has made no factual allegations specific to the Netflix

accused products, Realtime has failed to state a plausible claim that Netflix infringes method

claim 1 recited in the Complaint.  That Claim should be dismissed.

## IV.   PLAINTIFF FAILS TO PROPERLY PLEAD INDIRECT INFRINGEMENT

Both inducement and contributory infringement require that the infringer have actual or

constructive knowledge of the patent.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754,

768 (2011).  Realtime alleges that Netflix knew of the asserted patents only upon Realtime's

filing of the Complaint.  D.I. 1, ¶ 29; ¶ 53; ¶ 72; ¶ 91 (p. 43); ¶ 91 (p. 56); ¶ 110.  Despite this,

Realtime also alleges that Netflix committed pre-suit induced and contributory infringement.

D.I. 1, ¶¶ 30-31 & 25; ¶¶ 73-74; ¶¶ 92-93 (p. 44-45); ¶¶ 92-93 (p. 56-58); ¶¶ 111-12.  Realtime's

allegations of pre-suit induced and contributory infringement are devoid of any facts showing

that Netflix had any knowledge of the asserted patents prior to the filing of the complaints.

## CONCLUSION

Netflix requests that the Court find all claims of the '535, '477, '907, and '046 patents

ineligible under Section 101, and dismiss Plaintiff's claims for infringement of all asserted

patents, and Plaintiff's claims for pre-suit induced and contributory infringement for all patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jack B. Blumenfeld*

OF COUNSEL:

Katherine Vidal
Matthew R. McCullough
Winston & Strawn LLP
275 Middlefield Road, Suite 205
Menlo Park, CA  94025
(650) 858-6500

Andrew B. Grossman
Winston & Strawn LLP
333 S. Grand Avenue
Los Angeles, CA  90071
(213) 615-1700


February 5, 2018

Jack B. Blumenfeld (#1014)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 5, 2018, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 5, 2018, upon the following in the manner indicated:

Stephen B. Brauerman, Esquire                                          *VIA ELECTRONIC MAIL*
Sara E. Bussiere, Esquire
BAYARD, P.A.
600 North King Street, Suite 400
Wilmington, DE  19801
*Attorneys for Plaintiff*

Mark A. Fenster, Esquire                                               *VIA ELECTRONIC MAIL*
Reza Mirzaie, Esquire
Brian D. Ledahl, Esquire
C. Jay Chung, Esquire
Philip X. Wang, Esquire
Timothy T. Hsieh, Esquire
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025-1031
*Attorneys for Plaintiff*


                                        */s/ Jack B. Blumenfeld*
                                        _____
                                        Jack B. Blumenfeld (#1014)