**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| REALTIME ADAPTIVE STREAMING LLC, | |
| Plaintiff, | C.A. No. 1:17-cv-01692-JFB-SRF |
| v. | |
| NETFLIX, INC. AND NETFLIX STREAMING SERVICES, INC., | |
| Defendants. | |

**PLAINTIFF REALTIME ADAPTIVE STREAMING LLC'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANTS' MOTION (D.I. 11) TO DISMISS COMPLAINT**

February 20, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 N. King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Adaptive Streaming LLC*

# TABLE OF CONTENTS

**Page(s)**

I.  NETFLIX FAILS TO SHOW THAT ANY OF THE 114 CLAIMS OF THE FOUR
    FALLON PATENTS ARE INVALID UNDER §101........................................................ 1

    B.  Netflix Cannot Establish That The Patent Claims Are Directed To An
        Abstract Idea Under *Alice* Step 1...............................................................1

        1.  Examining the patents confirms that they claim technological solutions
            to technological problems, not abstract subject matter...................2

        2.  Another district court has repeatedly held that the subject matter of the
            asserted patents is patent-eligible despite several prior challenges. 6

        3.  Netflix's flawed arguments mischaracterize the law and claims. ...........7

            a. Netflix mischaracterizes the applicable law. ...............................7

            b.      Netflix mischaracterizes the claims. ...................................9

    C.  Netflix Also Cannot Establish That the Claims Are Patent Ineligible Under
        *Alice* Step 2. ...........................................................................................11

        1.  Section 101 analysis under *Alice* step 2 involves questions of fact. .....11

        2.  The intrinsic record confirms that the claimed inventions involve
            unconventional technological solutions under step 2. ...................13

    C.  Netflix Fails To Analyze Every Single Claim Separately. .............................15

II. REALTIME'S ELEMENT-BY-ELEMENT ALLEGATIONS FAR EXCEED THE
    *TWOMBLY* STANDARD. ............................................................................... 16

III. NETFLIX'S ARGUMENT REGARDING THE '462 AND '298 PATENTS IS
     MERITLESS.................................................................................................. 18

    B.  Realtime's Allegations Regarding '462 Patent Easily Exceeds the *Twombly*
        Standard for Pleading Infringement...........................................................18

    C.  Realtime's Allegations Regarding '298 Patent Also Easily Exceeds the
        *Twombly* Standard for Pleading Infringement. ..........................................19

IV. NETFLIX'S ARGUMENT REGARDING INDIRECT INFRINGEMENT IS
    MERITLESS.................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    -- F.3d --, 2018 WL 843288 (Fed. Cir. Feb. 14, 2018). ................................................... 12, 16

*Alice Corp. v. CLS Bank Int'l*,
    34 S. Ct. 2347 (2014) ........................................................................................................ 1

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) .................................................................................................... 16

*Berkheimer v. HP Inc.*,
    -- F.3d --, 2018 WL 774096 (Fed. Cir. Feb. 8, 2018) ..................................................... 11, 16

*C. R. Bard, Inc. v. Angiodynamics, Inc.*,
    156 F. Supp. 3d 540 (D. Del. 2016) ................................................................................ 16

*Cal. Institute of Tech. v. Hughes Commcn's Inc.*,
    No. 2:13-cv-07245-MRP-JEM, 2014 U.S. Dist. LEXIS 156763 (C.D. Cal Nov. 3 2014) ....... 10

*Content Extraction v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014) ....................................................................................... 9

*Core Wireless Licensing v. LG Elecs., Inc.*,
    --- F.3d ---, 2018 WL 542672 (Fed. Cir. Jan. 25, 2018). .................................................. 4

*DDR v. Hotels.com LP*,
    773 F.3d 1245 (Fed. Cir. 2014) ....................................................................................... 4

*Enfish, LLC v. Microsoft Corp*,
    822 F.3d 1327 (Fed. Cir. 2016) ....................................................................................... 3

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    --- F.3d ---, 2018 WL 341882 (Fed. Cir. Jan. 10, 2018). ................................................. 2, 8

*Fujitsu Ltd. v. Netgear, Inc.*,
    620 F.3d 1321 (Fed. Cir. 2010) ....................................................................................... 19

*In re TLI Communications LLC Patent Litigation*,
    823 F.3d 607 (Fed. Cir. 2016) ......................................................................................... 9

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ....................................................................................... 9

*IOP Techs., Inc. v. Amazon.com, Inc.*,
   728 F.3d 1359 (Fed. Cir. 2015)............................................................................. 9

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
   2017 WL 1312942 (D. Del. Apr. 5, 2017) ........................................................ 17

*Lifetime Indus. Inc. v. Trim-Lok Inc.*,
   869 F.3d 1372 (Fed. Cir. 2017)........................................................................... 16

*MAZ Encryption Techs. LLC v. Blackberry Corp.*,
   No. 13-304-LPS, 2016 WL 5661981 (D. Del. Sept. 29, 2016) .............................. 11

*McGinley v. Franklin Sports, Inc.*,
   262 F.3d 1339, 1351 (Fed. Cir. 2001).................................................................. 11

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
   837 F.3d 1299 (Fed. Cir. 2016)............................................................................. 7

*Modern Telecom Sys. LLC v. TCL Corp.*,
   2017 WL 6524526 (D. Del. Dec. 21, 2017)......................................................... 17

*Nichia Corp. v. VIZIO, Inc.*,
   2017 WL 3836141 (E.D. Tex. July 24, 2017) ..................................................... 17

*Prowire LLC v. Apple, Inc.*,
   2017 WL 3444689 (D. Del. Aug. 9, 2017). ........................................................ 16

*Raindance Tech. Inc. v. 10x Genomics, Inc.*,
   2016 WL 927143 (D. Del. Mar. 4, 2016) ........................................................... 17

*Realtime Data LLC v. Rackspace US, Inc.*,
   2017 WL 2590195 (E.D. Tex. June 14, 2017)...................................................... 6

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)............................................................................. 8

*Smartgene, Inc. v. Advanced Biological Labs., SA*,
   555 Fed. Appx. 950 (Fed. Cir. 2014).................................................................... 9

*Stragent, LLC v. BMW of N. Am., LLC*,
   2017 WL 2821697 (E.D. Tex. Mar. 3, 2017) ..................................................... 19

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012)........................................................................... 19

*TQP Dev., LLC v. Intuit Inc.*,
   2014 WL 651935 (E.D. Tex. Feb. 19, 2014). ..................................................... 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC,*
    874 F.3d 1329 (Fed. Cir. 2017) ........................................................................... 9

*U.S. Gypsum Co. v. New NGC, Inc.,*
    2017 WL 5187845 (D. Del. Aug. 18, 2017). .......................................................... 16

*Univ. of Pittsburgh v. Varian Med. Sys., Inc.,*
    569 F.3d 1328 (Fed. Cir. 2009) ............................................................................ 17

*Visual Memory LLC v. Nvidia Corp.,*
    867 F.3d 1253 (Fed. Cir. 2017) ........................................................................ 4, 7

*Windy City Innov., LLC v. Microsoft,*
    193 F. Supp. 3d 1109 (N.D. Cal. 2016) ............................................................... 17

Netflix's argument that the Fallon patents[1] are ineligible under §101 fails because the claims are directed to a particularized technological solution that improve computer capabilities—e.g., particularized digital data compression systems to increase the capacity of a computer system to store or transfer data more efficiently in flexible ways. The claims describe specific ways (using multiple compressors, asymmetric compressors, parameter of data block and/or throughput) to make this happen.[2] In the least, the intrinsic record raises factual issues that preclude dismissal.

Netflix also argues that Realtime's Complaint is insufficient under *Iqbal/Twombly*. A review of Realtime's 70-page Complaint—providing detailed element-by-element allegations—shows the fallacy of that argument. Netflix's argument is premised on a faulty legal standard and mischaracterization of the Complaint. Netflix's argument regarding pre-suit indirect infringement should also be rejected, as it is an improper attempt to prematurely limit damages.

## I. NETFLIX FAILS TO SHOW THAT ANY OF THE 114 CLAIMS OF THE FOUR FALLON PATENTS ARE INVALID UNDER §101.

Under 35 U.S.C. §101, patent eligibility is to be construed broadly, and the exceptions are narrow. One exception is the "abstract idea" exception. The Supreme Court has warned against interpreting the exception too broadly, as that could could "swallow all of patent law" because "[a]t some level, 'all inventions ... embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014).

### B. Netflix Cannot Establish That The Patent Claims Are Directed To An Abstract Idea Under *Alice* Step 1.

---

[1] The '535, '477, '907, and '046 patents asserted in this case ("Fallon patents") are related to each other and share substantially the same specification. Netflix has not argued that the remaining two asserted patents (the '462 and '298 patents) are patent ineligible under §101.

[2] The §101 arguments similar to those of Netflix have been considered and rejected by another court involving other Realtime patents that are incorporated by reference into the Fallon patents asserted in this case. Specifically, two judges in Texas have repeatedly found patents of the same inventor involving the same field (compression) to be eligible under §101. (*See* Ex. 1-3.)

1

The threshold inquiry of the §101 analysis requires Netflix to demonstrate that the patent claims are directed to an "abstract idea," *i.e.*, an "idea of itself" or "fundamental truths or fundamental principles the patenting of which would pre-empt the use of basic tools of scientific and technological work." *Alice*, 134 S. Ct. at 2355. Netflix fails to do so here. Under any fair characterization, the claims here are patent-eligible because they provide particular, technical solutions to technical problems specific to compression of digital computer data.

### 1.  Examining the patents confirms that they claim technological solutions to technological problems, not abstract subject matter.

Under the Supreme Court's *Alice* framework, claims that "improve[] an existing technological process" or "solve a technological problem in 'conventional industry practice'" are patent eligible. *Alice*, 134 S. Ct. at 2358. The Federal Circuit has applied these standards in several controlling cases to uphold the patentability of claims challenged as abstract.

In *Finjan*, the Federal Circuit held eligible a patent for identifying suspicious computer virus. *Finjan, Inc. v. Blue Coat Sys., Inc.*, --- F.3d ---, 2018 WL 341882, at *2-4 (Fed. Cir. Jan. 10, 2018). Finjan's claim recited only three steps: (a) "receiving" computer program; (2) "generating … security profile that identifies suspicious code;" and (3) "linking" the security profile to the computer program. *Id.* The claim did not specify *how* to "identif[y] suspicious code." *Id.* at *2. While acknowledging that prior Federal Circuit precedent has held that "virus screening," by itself, is an abstract idea, the court nevertheless held that Finjan's patent claim was not abstract because it was not directed to just any "virus screening," but instead limited to a particular type of virus screening, which constituted improvement in computer functionality. In so holding, the court rejected the same argument advanced by Netflix here, namely, that the claims "do not sufficiently describe how to implement" any idea. *Id.* at *3-4. On this point, the court held that the three recited claimed steps were all that was needed to render the claim patent-eligible. *Id.*

2

The Realtime claims here present an even clearer case for patent-eligibility than those at issue in *Finjan*. In contrast to Finjan's patent, which was about "virus screening" that previously was held to be abstract, Realtime's claims are directed to digital data compression, which plainly is not abstract. *See DDR*, 733 F.3d at 1259. And the asserted claims are not just directed to digital data compression in *general*, but a *particularized* subset of novel digital data compression, which is directed to improving the capacity of a computer system to store more data or to transfer data more efficiently across computer systems. Moreover, the asserted claims require even more specific steps and components than those held eligible in *Finjan*. These include: (i) the use of "a **plurality** of **different**" compression algorithms or techniques; (ii) determining "data parameters" or "attributes" of a digital data block; (iii) "select[ing]" specific techniques based upon that determination relating to "a throughput of a communication channel," or a digital data "access profile," (iv) requiring the selected techniques to be "asymmetric," and other novel elements. *E.g.,* '535 patent claims 1 & 15; '477 claim 1; '907 claim 1; '046 patent claims 1 & 34.

In *Enfish*, the Federal Circuit reversed an ineligibility ruling on a database patent, which the district court described as being directed to "storing, organizing, and retrieving memory in a logical table." *Enfish, LLC v. Microsoft Corp*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The Federal Circuit held that "describing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Id.* It further criticized the district court's analysis for "downplay[ing] the invention's benefits" disclosed in the specification. *Id.* at 1337–38. Because the claims were "**designed to improve the way a computer stores and retrieves data in memory**,"[3] they were "directed to a specific implementation of a

---

[3] All emphasis added, unless otherwise stated.

solution to a problem in the software arts" and, thus, "not directed to an abstract idea." *Id.* at 1339.[4]

In *Visual Memory*, the claims recited a system with "operational characteristics" which "determines a type of data." *Visual Memory LLC v. NVidia*, 867 F.3d 1253, 1257 (Fed. Cir. 2017). The court rejected defendant's argument that the claims "are directed to no more than a desired result" or that the patent claim "nothing more than a black box." *Id.* at 1260-61. The court cautioned against over-simplifying the claims, and held that they were directed to "improvements to computer functionality" as opposed to "economic or other tasks for which a computer is used in its ordinary capacity." *Id.* at 1258-1261.

In *Core Wireless*, the Federal Circuit affirmed eligibility of a patent about summarizing and presenting information in electronic devices. *Core Wireless Licensing v. LG Elecs., Inc.*, --- F.3d ---, 2018 WL 542672, *4 (Fed. Cir. Jan. 25, 2018). In so doing, the court rejected defendants' failure to acknowledge key claim elements and cautioned that courts "must be mindful that all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Id.* at *3. It held that the patent claimed "an improvement in the functioning of computers" (*id.* at *3-4) because the claims were limited "to a ***particular*** manner of summarizing and presenting information in electronic devices." *Id.* at *4. As in *Core Wireless*, the patents at issue here claim particular manners of selecting and compressing digital data to improve the capacity of a computer system to store more data or to transfer data more efficiently.

---

[4] Similarly, in *DDR*, the claims addressed "the problem of retaining website visitors." *DDR v. Hotels.com LP*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Despite being directed to e-commerce, the court held that these claims "stand apart" from abstract claims "because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet." *Id.* Instead, "the claims recite[d] an invention that is not merely the routine or conventional use of the Internet." *Id.* at 1259. Thus, they were eligible because the patented claims were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.*

As in *Finjan, Enfish, DDR*, *Core Wireless,* and *Visual Memory*, the claimed inventions here provide particular technological solutions to overcome technological problems, i.e., those specific to the field of digital-data compression. The patents themselves state they are directed to problems unique to the realm of digital data, a form of computer data "**not easily recognizable to humans in native form**." (*E.g.,* '535 patent at 2:28-30.)[5] In this realm, the patents describe using a combination of particular steps or structural computer components to help improve detection and exploitation of redundancies, for example, in the incoming strings of computer "1s" and "0s."

Like the inventions in *Finjan, DDR*, *Enfish, Core Wireless,* and *Visual Memory*, the patents teach specific improvements to the function of the computer parts themselves, such as computer memory and computer-data storage and retrieval mechanisms. For example, the patents describe problems in the conventional arts, including "limitations in the size of the data"; "file systems [that] are not able to randomly access compressed data in an efficient manner"; "slower access times"; and "a compromise between efficient data storage, access speed, and addressable data space." ('535 patent at 6:31-53.) These are technological problems, as opposed to human problems.

The Fallon patents expressly confirm that "[t]hese and other limitations within the current art are solved with the present invention." (*Id.* at 7:46-47.) For instance, the claims recite novel technological systems in digital data compression utilizing two or more compressors (*e.g.,* "asymmetric" compressor[6]), and the systems configured to select a compressor based on a parameter of a data block / throughput of a communication channel. (*See, e.g., id.* at 7:51-8:54.)[7]

---

[5] "[S]ources properly considered on a motion to dismiss [include] the complaint, the patent, and materials subject to judicial notice." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, -- F.3d --, 2018 WL 843288, at *5 (Fed. Cir. Feb. 14, 2018).

[6] "In "[a]n asymmetrical data compression algorithm[,] … the execution time for the compression and decompression routines differ significantly." ('535 patent at 9:63-66.)

[7] *See also, e.g.,* '535 claims 1 & 15; '477 claim 1; '907 claim 1; '046 claims 1 & 34.

The patents describe that "the overall throughput (bandwidth) … is one factor considered by the controller 11 in deciding whether to use an asymmetrical or symmetrical compression" (*id.* at 11:25-29), and recognized that "utiliz[ing] an asymmetrical algorithm … [may] provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm" (*id.* at 12:14-20). These claimed solutions are not abstract. They are necessarily rooted in computer technology and aimed at solving limitations in then-existing digital-data compression systems,[8] *i.e.*, technological solutions to technological problems.

Realtime's claims present a clearer case of eligibility than those held eligible in other cases. In *DDR*, after analyzing the invention, which were about "look and feel" of websites, the court held that, although the "claims do not recite an invention as technologically complex as an improved, particularized method of **digital data compression**," they were nonetheless eligible. *DDR,* 773 F.3d at 1259. The claims here thus present precisely the type of invention the Federal Circuit recognized as unquestionably eligible: particularized methods of digital data compression.

### 2.     Another district court has repeatedly held that the subject matter of the asserted patents is patent-eligible despite several prior challenges.

The asserted Fallon patents incorporate other patents of related Realtime entity, all invented by the same inventor and covering the same field (compression), including U.S. Pat. Nos. 6,195,024 and 6,309,424 (*see* '535 patent at 5:33-38); and 6,601,104 (*id.* at 9:19-28). These Realtime patents incorporated by reference in the asserted Fallon patents are in the same patent

---

[8] The patents are limited to compression of digital data. For example, the term "compress," which is in all claims, had been construed for other Realtime patents to mean "represent data with fewer *bits*," indicating digital data compression ("bit" is a unit of digital data). *Realtime Data LLC v. Actian Corp.,* 2016 WL 4054914, at *18 (E.D. Tex. July 28, 2016); *Realtime Data LLC v. Rackspace US, Inc.,* 2017 WL 2590195, at *8 (E.D. Tex. June 14, 2017). Also, "data block" was construed for other Realtime patents to mean "a single unit of data, which may range in size from individual *bits* through complete files or collection of multiple files." *Id.* at *18. Any construction that does not limit the terms to digital data would be contrary to the plain and ordinary meaning.

family as other Realtime patents that a district court has repeatedly held to be patent eligible. For example, in *Realtime Data LLC v. Actian Corp.*, a Texas court found U.S. Pat. Nos. 7,378,992; 8,643,513; 6,597,812; 7,415,530; and 9,116,908 to be patent eligible.[9] 2016 WL 259581 (E.D. Tex. Jan. 21, 2016) (Ex. 2; *see also* Ex. 3.) And, in *Realtime Data LLC v. Carbonite Inc.*, the Texas court found U.S. Pat. Nos. 9,054,728 and 8,717,204, as well as the '530 and '908 patents to be patent eligible.[10] 2017 WL 4693969 (E.D. Tex. Sept. 20, 2017) (Ex. 1).

In so holding, the *Realtime* court rejected some of the same arguments advanced by Netflix here. For instance, the '728 patent related to "analyz[ing] data … to identify one or more parameters or attributes" in performing compression, among other things. *Id.* at *1. The court held that the patents are "directed to non-abstract improvements to computerized data compression techniques" and "is a solution to a computing problem." *Id.* at *5. Same reasoning applies here.

### 3.    Netflix's flawed arguments mischaracterize the law and claims.

#### a.    Netflix mischaracterizes the applicable law.

As the Federal Circuit in *Finjan*, *Enfish, Core Wireless,* and *Visual Memory* explained, the law draws a line of distinction between patent claims in which "computers are invoked merely as a tool" (which may be ineligible) and patent claims that provide technological solutions to technological problems (e.g., "improvement in computer capabilities," which are patent eligible). *Enfish*, 822 F.3d at 1335-36; *Visual Memory*, 867 F.3d at 1258-59.[11] Applying that law here requires rejection of Netflix's argument. It is not the mere fact that the asserted patents are in the

---

[9] The '513/'992 patents are related to the '024/'424 patents incorporated by reference in the asserted Fallon patents; and the '530/'908 patents are related to the '104 patent incorporated by reference in the asserted Fallon patents.

[10] The '728 patent is related to the '024/'424 patents incorporated into the asserted Fallon patents.

[11] *See also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (rejecting argument that inventions "simply use a computer as a tool" and holding patents eligible because claims "focused on a specific asserted improvement in computer animation").

digital domain that is relevant; rather, it is the fact that the problems that gave rise to Realtime's inventions are rooted in digital computer technologies, and also that the solutions provided in Realtime's inventions are improvements on the computer capabilities—*e.g.*, increasing the capacity of a computer system to store or to transfer data more efficiently in flexible ways.

Netflix relies on inapplicable cases involving patents that are not about digital data compression at all, much less the narrow subset of digital data compression systems claimed here. For example, the patent at issue in *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017), relied on by Netflix, was about "creating [an] image" by using a mathematical formula ("one multiplication operation"). 855 F.3d at 1324. Netflix mischaracterizes *RecogniCorp* in arguing that it was about compression of digital data (*e.g.,* Mot. at 10, n.4). The Federal Circuit expressly found otherwise, holding that the invention in *RecogniCorp* "**does not even require a computer; the invention can be practiced verbally**." 855 F.3d at 1328. In contrast, the claims at issue here cannot be "practiced verbally," nor do they claim a mathematical formula. Indeed, the patent specifically discusses digital computer data "***not easily recognizable to humans*** in its native form." ('535 patent at 2:28-30.) Moreover, unlike an invention about creating an image, the Fallon patents are directed to technological improvements (*e.g.*, specific methods of reducing the amount of bits) that solve technological problems (*e.g.*, increasing the capacity of a computer system to store or transfer data more efficiently in flexible ways) by utilizing multiple compressors (*e.g.*, asymmetric compressors) and selecting among the multiple compressors to compress data blocks based on a parameter relating to, *e.g.*, the data blocks and/or throughput (bandwidth) of a communication channel.[12] Netflix has not shown (nor can it) that the inventions were conventional.

Netflix's reliance on other cases, involving entirely different subject matter, is similarly

---

[12] *See, e.g.,* '535 patent claims 1 & 15; '477 claim 1; ''907 claim 1; ''046 claim 1 & 34.

misplaced. For instance, *Smartgene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. Appx. 950 (Fed. Cir. 2014) cited by Netflix (Mot. at 8-9) involved a patent claiming mental steps that medical "doctors do routinely." 555 Fed. Appx. at 955.[13] Claims at issue here are nothing like the claims at issue in the cases cited by Netflix—*e.g.*, the asserted patents do not claim steps that doctors perform, "pricing products," financial budgeting tools, laws of nature, mathematical formula, credit card transactions, mental process, contractual relationships, or any other abstract idea.

### b.    Netflix mischaracterizes the claims.

Netflix oversimplifies the claims in arguing that the asserted Fallon patents are directed to "encoding data based on a parameter" (*e.g.,* Mot. at 7-8, 11, 13, 14) which it purports "a human can" perform (Mot. at 10). As the Federal Circuit has repeatedly cautioned, "describing the claims at [] a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule." *Enfish*, 822 F.3d at 1337.

Moreover, in making its "human can" perform argument (Mot. at 10), Netflix also ignores aspects of the claims, including, e.g., (1) "plurality of compressors," (2) "one or more asymmetric compressors," (3) selecting compression based on "throughput of a communication channel," (4) "memory device," (5) "controller" / "CPU," (6) "descriptor of the at least the portion of the data

---

[13] Other cases cited by Netflix are similarly inapposite. *E.g., Alice*, 134 S. Ct. 2347 (claims re: "exchanging financial obligations"); *Content Extraction v. Wells Fargo Bank*, 776 F.3d 1343 (Fed. Cir. 2014) (claims re: processing "hard copy documents"); *In re TLI*, 823 F.3d 607 (Fed. Cir. 2016) (claims re: classifying and storing images in an organized manner, which was merely "organizing human activity"); *Intellectual Ventures I LLC v. Erie Indem. Co.,* 850 F.3d 1315, 1327 (Fed. Cir. 2017) (patent re: "organizing and accessing records"); *Two-Way Media Ltd. v. Comcast Cable Comm., LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (claims re: "sending," "directing," and "monitoring" information); *Intellectual Ventures I LLC v. Capital One Bank*, 792 F.3d 1363 (Fed. Cir. 2015) (patent on "tracking financial transactions" and "budgeting"); *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (patent on "managing a game of bingo"); *Ultramercial v. Hulu*, 772 F.3d 709 (Fed. Cir. 2014) (patent re: distributing copyrighted media at no cost in exchange for viewing advertisement); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (claims re: "fundamental economic concept of offer-based price optimization").

block," (7) "access profile," (8) "slow compress encoder," (9) "fast decompress decoder," (10) "common host system," among others. (*E.g.,* '535 patent at 20:29-23:30; *see also, e.g.,* claims of '477, '907, and '046 Patents.) Netflix's assertions notwithstanding, no lawyer calls the Bluebook a book of compression. (*See* Mot. at 2.) Using "emojis" is not the same as "compression," much less the same as the particularized form of digital data compression taught in the asserted patents.[14]

Netflix's argument also ignores the actual character of the claims. The claims recite specific processes, systems, and methods to improve computer capability. For example, the claims recite selecting "asymmetric" compression, from among a ***plurality*** of digital compressors, based on parameter of a digital data block or throughput of a communication channel. (*See, e.g.,* '535 patent cl. 15.)[15] In describing the claims, Netflix omits and de-emphasizes aspects, including, e.g., the use of "plurality of compressors" recited in the claims. (*See* Mot. at 8, 11, 13-15.) Netflix does not argue (nor can it) that such aspects were conventional before Realtime's patented inventions.

The inventions overcame limitations and issues relating to "a compromise between efficient data storage, access speed, and addressable data space." ('535 patent at 6:31-53.) The patents describe that "the overall throughput … is one factor considered by the controller 11 in deciding whether to use an asymmetrical or symmetrical compression" (*id.* at 11:25-29), and

---

[14] Moreover, courts have held Netflix's "human brain" arguments unhelpful. The Federal Circuit Judge Bryson, sitting by designation, held patent claim to be eligible where the claims "involve[d] a several-step manipulation of data that, except perhaps in its most simplistic form, could not conceivably be performed in the human mind or with pencil and paper." *TQP Dev., LLC v. Intuit Inc.,* 2014 WL 651935, at *4 (E.D. Tex. Feb. 19, 2014). The "human mind" argument is "unhelpful for computer inventions" and "mislead[s] courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer." *Cal. Tech. v. Hughes Commcn's Inc.,* 59 F. Supp. 3d 974, 994 (C.D. Cal. 2014). The patents themselves refute Netflix's flawed analogies: "**digital data** is … **not easily recognizable to humans** in its native form." ('535 patent at 2:28-30.)
[15] *See also, e.g.,* '535 claim 1; '477 claim 1; '907 claim 1; '046 claims 1 & 34.

recognized that "utiliz[ing] an asymmetrical algorithm … [may] provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm" (*id.* at 12:14-20). These are technological solutions to technological problems, in contrast to human problems. The claims provide specific technological ways to improve computer functionalities (e.g., using particularized compression system/method to increase the capacity of a computer system to store or transfer data more efficiently in flexible ways). The inventions are not about pen-and-paper solutions limited to a "particular technological environment" (Mot. at 12-15).

In sum, the asserted claims can only be read as providing technological improvements and solutions specific to digital data compression and are not abstract. At the very least, this Court must accept all the allegations of the complaint and descriptions from the intrinsic record[16] as true, and drawing all reasonable inferences in favor of Realtime, deny Netflix's motion.

### C.    Netflix Also Cannot Establish That the Claims Are Patent Ineligible Under *Alice* Step 2.

Because Netflix cannot meet its burden under step 1, the inquiry ends there and step 2 need not be addressed. But in any event, Netflix also cannot meet its burden under step 2.

### 1.    Section 101 analysis under *Alice* step 2 involves questions of fact.

Step 2 requires examination of the claim elements "both individually and 'as an ordered combination.'" *Alice*, 134 S. Ct. at 2355. Netflix cannot prevail on this step simply by showing that individual claim elements are "known in the art." *Bascom*, 827 F.3d at 1349–50. Indeed, "that something is disclosed in a piece of prior art ***does not mean it was well- understood, routine, and conventional***." *Berkheimer v. HP Inc.*, -- F.3d --, 2018 WL 774096, at *6 (Fed. Cir. Feb. 8, 2018).[17]

---

[16] The asserted patents are attached to, and referenced in, the Complaint. Like the allegations in a complaint, facts in the asserted patents are viewed in light most favorable to Realtime. *MAZ Encryption Techs. LLC v. Blackberry Corp.*, 2016 WL 5661981, at *5 (D. Del. Sept. 29, 2016).
[17] *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1351 (Fed. Cir. 2001) ("The genius of invention is often a combination of known elements which in hindsight seems preordained.").

The Federal Circuit in *Berkheimer* confirmed that any *Alice* step 2 analysis involves underlying factual questions. *Id.* at \*5-6. Specifically, the court clarified that "[t]he question of whether a claim element or combination of elements is well-understood, routine and conventional to a skilled artisan in the relevant field is ***a question of fact*** … [which] must be proven by ***clear and convincing evidence***." *Id.* After reviewing the intrinsic record in the case, the court held that "[t]he improvements in the specification, to the extent they are captured in the claims, create a factual dispute regarding whether the invention describes well-understood, routine, and conventional activities." *Id.* Accordingly, the district court there committed legal error in granting summary judgment despite this factual dispute. *Id.*

In *Aatrix Software*, the Federal Circuit applied these principles to vacate a district court's §101 ruling pursuant to a Rule 12 motion. *Aatrix Software, Inc. v. Green Shades Software, Inc.*, -- F.3d --, 2018 WL 843288, at \*6 (Fed. Cir. Feb. 14, 2018). Buttressing its precedent in *Berkheimer*, the court held that "patent eligibility can be determined at the Rule 12(b)(6) stage … ***only when*** there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Id.* at \*2. Moreover, the court explained that "sources properly considered on a motion to dismiss [include] the complaint, the patent, and materials subject to judicial notice." *Id.* at \*5. The court then reviewed these sources and held that the district court erred in granting the motion to dismiss because plaintiff's "allegations at a minimum raise factual disputes underlying the §101 analysis, such as whether the claim term 'data file' constitutes an inventive concept, alone or in combination with other elements." *Id.* at \*4-5.

The *Aatrix* court did not end its analysis there. In the first decision of its kind in the §101 context, the court applied well established Rule 12(b)(6) principles and also found that the district court abused its discretion when it denied leave to file an amended complaint. In remanding, the

court then expressly allowed the amended complaint, holding that, "[v]iewed in favor of [plaintiff], as the district court must at the Rule 12(b)(6) stage, the complaint alleges that the claimed combination improves the functioning and operation of the computer itself. These allegations, if accepted as true, contradict the district court's conclusion that the claimed combination was conventional or routine." *Id.* at *4; *see also, e.g., id.* at *3 ("[A]t that stage there certainly were allegations of fact that, if [plaintiff's] position were accepted, would preclude the dismissal.").

## 2.   The intrinsic record confirms that the claimed inventions involve unconventional technological solutions under step 2.

The claims of the four asserted Fallon patents recite unconventional technological solutions, namely, the combination of (1) asymmetric compressors, (2) two or more compressors, (3) selecting compressor based on parameter / throughput, and/or (4) access profile.[18]

The unconventional solutions recited in the claims solve the problems in the state of the art at the time of the invention. Those problems include, to name a few:

- "[D]ata storage and retrieval bandwidth limitations" ('535 patent at 1:61-62);

- "[M]agnetic disk mass storage devices currently employed in a variety of [] computing applications suffer from significant seek-time access delays along with profound read/write data rate limitations." (*Id.* at 2:58-61); and

- "[T]he compression ratio to encoding and decoding speed achieved." (*Id.* at 4:57-60.)

In applying compression, the patentees further recognized that:

- "What is not apparent from these algorithms, that is also one major deficiency within the current art, is knowledge of their algorithmic efficiency." (*Id.* at 5:5-10);

- "[A] compromise between efficient data storage, access speed, and addressable data

---

[18] *E.g.,* '535 patent cl. 1 ("plurality of access profiles," "asymmetric data compression") & cl. 15 ("asymmetric compressors," "plurality of compressors"); '477 cl. 1 ("plurality of different asymmetric data compression," selecting encoder based on "throughput"); '907 cl. 1 ("asymmetric data compression," selecting compression based on "throughput"); '046 cl. 1 (two "compression routine[s]," selecting compression based on "throughput") & cl. 34 (two "compression routine[s]," "asymmetrical routine," selecting based on "throughput").

space." (*Id.* at 6:39-42);

- "[F]ile systems are not able to randomly access compressed data in an efficient manner." (*Id.* at 6:51-53); and

- "Competing requirements of data access bandwidth, data reliability/redundancy, and efficiency of storage space are encountered." (*Id.* at 7:41-45.)

After describing these technological problems, the patents confirm that "[t]hese and other limitations within the current art are solved with the present invention." (*Id.* at 7:46-47.) And the remainder of the patents make clear that the patented solutions are unconventional.

For example, the inventors of the Fallon patents recognized that "a system and method that would provide dynamic modification of compression system parameters so as to provide an optimal balance between execution speed of the algorithm (compression rate) and the resulting compression ratio, is highly desirable." (*Id.* at 1:56-60; *see also id.* at 9:55-59.) In other words, the claimed dynamically modified compression system—which can use two or more compressors and selects compression based on "***throughput of a communication channel***"—was unconventional.

As another example, the inventors of the Fallon patents also recognized the unconventional effect of using asymmetrical compression[19] in specific situations:

"[W]ith data sets falling within ***Access Profile*** 1 [i.e., 'data is written to a storage medium once (or very few times) but is read from the storage medium many times'], ***it is preferable to utilize an asymmetrical algorithm*** that provides a slow compression routine and a fast decompression routine so as to provide an increase in the overall system performance as compared the performance that would be obtained using a symmetrical algorithm. Further, the compression ratio obtained using the asymmetrical algorithm would likely ***be higher*** than that obtained using a symmetrical algorithm (***thus effectively increasing the storage capacity*** of the storage device)." *Id.* at 12:14-25; *see also id.* at 12:26-35.

In short, the claimed solutions (e.g., asymmetric compressors, two or more compressors, selecting compressor based on throughput of a communication channel) improve the functioning of a

---

[19] "An asymmetrical data compression algorithm is … one in which the execution time for the compression and decompression routines differ significantly." ('535 patent at 9:63-66.)

computer—e.g., increase the capacity to store / transfer data more efficiently in a flexible way.

But there is more. The novel and unconventional aspects are further confirmed by the intrinsic patent file histories. For example, in granting patent issuance, the USPTO stated that "the claimed subject matter in claims is allowable because the arts of record fail to teach or fairly suggest in combinations" recited in the claims, including, e.g., "asymmetric compressors," "plurality of compressors," "compression routing … depend[] on the throughput," and/or "access profile." (Ex. 5 ('535 FH, Allowance) at 6-8.)[20] The inclusion of these facts are even more compelling because "setting forth of reasons for allowance is not mandatory." MPEP §1302.14.

The intrinsic record confirms that the claims improve computer capabilities, and that they recite unconventional solutions. At the very least, they raise factual issues on these points. Applying *Berkheimer* and *Aatrix Software*, these factual issues preclude dismissal.[21]

### C.     Netflix Fails To Analyze Every Single Claim Separately.

Netflix's motion should be denied also because it provides no clear and convincing evidence that ***all*** of the claims of the Fallon patents (totaling 114 claims) are ineligible. Netflix merely provide conclusory attorney arguments asserting that some claims "provide only slight variations" on the claims that it had mentioned (*see* Mot. at 9, 12, 14, 15). Netflix's argument here amounts to repeating some of the claim elements and asserting, without any support, that they "do not add any patentable subject matter" (*id.*). Netflix's argument fails for the same reason as set forth above, *e.g.*, Netflix ignores the actual combination of limitations set forth in the claims.

Moreover, none of the claim elements of the asserted patents have ever been construed.

---

[20] Realtime respectfully requests the Court to take judicial notice of the file histories of the asserted patents, as the facts are part of the public record not subject to any reasonable dispute. *See Aatrix*, 2018 WL 843288 at *5; Fed. R. Evid. 201(b).

[21] Should the Court be inclined to grant dismissal, Realtime respectfully requests that dismissal be without prejudice to amending the complaint because "there certainly [are] allegations of fact that, if … accepted, would preclude the dismissal." *Aatrix*, 2018 WL 843288 at *3.

Any reasonable interpretation of the claim language would demonstrate that the claims are limited to digital data compression and cannot be performed with pen and paper or in human mind. Accordingly, claim construction would further illuminate the eligibility of the patents.[22]

Further, as explained above, §101 analysis involves underlying factual questions, including, *e.g.*: (a) the core aspects of the patented inventions; (b) whether the claimed inventions can be performed with pencil and paper; (c) whether the claimed inventions are merely generic or standard implementations of abstract ideas; and (d) whether all additional claim limitations are well understood, routine, or conventional. *See Berkheimer*, 2018 WL 774096, at *5-6; *Aatrix*, 2018 WL 843288, at *5-6. Viewing these in a light most favorable to Realtime precludes dismissal.

## II.     REALTIME'S ELEMENT-BY-ELEMENT ALLEGATIONS FAR EXCEED THE *TWOMBLY* STANDARD.

Netflix's *Iqbal / Twombly* arguments (Mot. at 15 et seq.) fail. The task of the court at the Rule 12(b)(6) stage is simply to assess whether the complaint "plead 'enough facts to state a claim for relief that is plausible on its face.'" *U.S. Gypsum Co. v. New NGC, Inc.*, 2017 WL 5187845, *1-2 (D. Del. Aug. 18, 2017). "Specific facts are not necessary"; a complaint containing "***more than labels and conclusions***" is sufficient. *Id*. Indeed, a complaint need only "place the alleged infringer 'on notice of what activity ... is being accused of infringement.'" *Lifetime Indus. Inc. v. Trim-Lok Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017).

"There is no requirement for [plaintiff] to 'prove its case at the pleading stage.'" *Id*. The test is not even *probably* success on the merits. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Instead, it is a threshold test: whether, taking all well-pleaded facts as true and viewing those facts

---

[22] *See, e.g., C. R. Bard, Inc. v. Angiodynamics, Inc.,* 156 F. Supp. 3d 540, 557 (D. Del. 2016) ("the arguments presented conflate the §101 analysis with anticipation and obviousness arguments for which the court routinely allows full discovery and makes its decision based on a full record. Such a record would include claim construction, which might be necessary").

in the light most favorable to the plaintiff, the claim is plausible, i.e., "above a *speculative* level."

*Prowire LLC v. Apple, Inc.*, 2017 WL 3444689, at *4 (D. Del. Aug. 9, 2017). As this Court stated:

> "[I]t is logical to presume that a defendant has greater access to and, therefore, more information about its accused method. … [T]he question … is whether … sufficient information [was provided] to allow the court to determine plausibility and to allow the named defendant to respond to the complaint. Absent specific guidance from the Federal Circuit directing the court to front-load the litigation process by requiring a detailed complaint in every instance, the court declines to do so." *Gypsum*, 2017 WL 5187845, *3.[23]

Realtime's 70-page Complaint far exceeds the standard. Netflix's argues that the Complaint is "devoid of even a sprinkling of factual content" (Mot. at 17), but one look at the Complaint puts the lie to that argument. (D.I. 1 at ¶¶ 15-114.) The Complaint identifies specific exemplary accused products and provides ***element-by-element*** analysis. (*Id.*)

Netflix appears to take issue with the Complaint alleging what it calls "three product categories and ten products" (Mot. at 16), and argues that Realtime needed to provide infringement contentions for all products. (Mot. at 16-17.) A complaint need not include an exhaustive list of accused products, much less infringement allegations as to all such exhaustive set of products. *IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*, 2017 WL 1312942, at *3 (D. Del. Apr. 5, 2017) ("To require that [plaintiff] name a specific infringing product would be nonsensical"; also recognizing that Delaware local rules provide for infringement contentions).[24] Netflix's motion

---

[23] All of cases cited by Netflix are inapposite. *E.g., Raindance Tech. Inc. v. 10x Genomics, Inc.*, 2016 WL 927143, at *2 (D. Del. Mar. 4, 2016) (complaint "makes no attempt to relate any their factual assertions with any of the asserted claims"); *Modern Telecom Sys. LLC v. TCL Corp.*, 2017 WL 6524526, at *3 (D. Del. Dec. 21, 2017) (complaint "simply parrot[] back words of the claim" without alleging "any facts"); *Bay Indus., Inc. v. Tru-Arx Mfg., LLC*, 2006 WL 3469599, at *2 (E.D. Wis. Nov. 29, 2006)(complaint "fail[ed] to identify any allegedly infringing product.").

[24] *Windy City Innov., LLC v. Microsoft,* 193 F. Supp. 3d 1109, 1115 (N.D. Cal. 2016) ("argument that it should be entitled to notice at the pleading stage of which specific products infringed on which specific claims in the patents is belied by both the local patent rules and Federal Circuit authority."); *Nichia Corp. v. VIZIO, Inc.,* 2017 WL 3836141, at *2 (E.D. Tex. July 24, 2017) ("[Plaintiff] is not required to exhaustively detail each infringing product in its Complaint.").

fails, as Realtime provided element-by-element infringement allegations for at least one product for each asserted patent.[25]

## III.   NETFLIX'S ARGUMENT REGARDING THE '462 AND '298 PATENTS IS MERITLESS

### B.   Realtime's Allegations Regarding '462 Patent Easily Exceeds the *Twombly* Standard for Pleading Infringement.

The allegations just for the '462 patent span 24 paragraphs over 11 pages. (D.I. 1 at ¶¶ 34-57.) Realtime's allegations identify specific exemplary Netflix products and state that they utilize a standard called H.265 (aka HEVC). (*E.g.*, *id.* at ¶¶ 35-37.) The Complaint also provides element-by-element analysis, using claim 1 as an example, providing explanations of why the limitation is met, along with citations to specific pin-cites and quotes from documents. (*Id.* at ¶¶ 38-43.)[26] The Complaint provides additional allegations using the "reference software." (*Id.* at ¶¶ 44-48.)

Netflix does not dispute that its products comply with the HEVC Standard. Nevertheless, Netflix argues that Realtime's allegations linking specific portions of the HEVC Standard to the claim limitations are insufficient. Netflix's argument demanding Realtime to "prove" infringement and to prove that Netflix "necessarily infringes" (Mot. at 18) seeks to impose a standard that would not even be applicable at summary judgment, much less at the pleading stage. Netflix also argues that HEVC Standard may not be relied upon because the '462 patent is about "an encoder" (Mot. at 18) while the HEVC "only" about decoding (*id.* at 19). Netflix's argument at best merely raises a factual issue, which is inappropriate on a Rule 12 motion. Netflix is wrong in any event; the HEVC Standard *does* provide details regarding HEVC *encoders*—*e.g.*, standard uses terms such

---

[25] If the Court were to grant Netflix's motion despite these arguments, Realtime respectfully requests leave to amend its Complaint. Fed. R. Civ. P. 15(a)(2); *U. of Pitts. v. Varian Med.,* 569 F.3d 1328, 1334 (Fed. Cir. 2009) ("dismissal with prejudice is a severe and disfavored").
[26] The Complaint goes through each limitations of claim 1. (D.I. 1 at ¶39 re: "reducing temporal redundancy…"; ¶40 re: "performing quantization…"; ¶41 re: "wherein the prediction error signal includes …"; and ¶¶ 42-43 re: "calculating," "setting," and "selecting" steps.)

as "encoding," "coding," "compressing," and other similar terms to describe the encoding process.

Even assuming that HEVC Standard is solely about decoding (contrary to fact), that does not mean that the HEVC is irrelevant to encoding. For example, if HEVC states that "block based motion compensation technique" is used to *decode*, then a reasonable inference is that "block based motion compensation technique" is used to *encode*. Allegations pointing to specific portions of HEVC regarding such a technique is logical. (*See* D.I. 1 at ¶39.) Moreover, pleaded facts are taken as true—i.e., that Netflix does perform the elements as alleged, regardless of whether the portion of HEVC alleged is "not required," "optional," or otherwise.[27, 28] Netflix's motion fails.

### C.   Realtime's Allegations Regarding '298 Patent Also Easily Exceeds the *Twombly* Standard for Pleading Infringement.

---

[27] Contrary to Netflix's apparent position that a patent must be "standard-essential" before an industry standard can be used for infringement (Mot. at 18), that is not the law. In fact, *Fujitsu Ltd. v. Netgear, Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010) cited by Netflix expressly held that an industry standard can properly be relied upon for infringement. *Id.* at 1327 ("We hold that a district court may rely on an industry standard in analyzing infringement."). The Federal Circuit has approved of using standards compliance *without* requiring proof of "essentiality." *E.g., Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1366 (Fed. Cir. 2012) (Holding that there is a triable issue of fact where the accused products "comply with the DVD standards," even though the products can be used in non-infringing manner). An industry standard may show that many, though not all, limitations of a claim are met. In such an instance, a claim may not be "standards essential," but the industry standard is still certainly highly relevant evidence for infringement.

[28] The sole case about a Rule 12(b)(6) motion cited by Netflix—*Stragent, LLC v. BMW of N. Am., LLC*, 2017 WL 2821697 (E.D. Tex. Mar. 3, 2017)—does not support its motion. The complaint at issue in *Stragent* was a bare-bones complaint with conclusory allegations spanning only a few pages, with 1 or 2 pages for infringement allegations for each of the two patents asserted by Stragent. *See* Ex. 4 (Stragent Complaint). Indeed, Stragent's complaint "does not compare even a single limitation of any of the asserted claims to any vehicle, vehicle component or any portion of the AUTOSAR Standard." *Stragent*, 2017 WL 2821697, at *10, fn.2; *id.* at *3, 5.

In sharp contrast to Stragent's complaint (Ex. 4), Realtime provided element-by-element analysis of exemplary claim 1 to Netflix's products and the HEVC Standard. (*See supra*; D.I. 1.) The *Stragent* court also stated that "Plaintiff may satisfy its pleading obligations … by linking the [industry] Standard to the asserted claims." (*Id.* at *10, n.6.) That is precisely what Realtime has done. Accordingly, *Stragent* actually supports Realtime and compels denial of Netflix's motion. The *Fujitsu* case cited by Netflix was about summary judgment, and the *Fujitsu* court merely stated that a patentee must prove that the asserted patent is standards essential only in situation where the patentee is using *solely* standard compliance to prove infringement. 620 F.3d at 1328.

The allegations regarding the '298 patent span 19 paragraphs over 8 pages. (D.I. 1 at ¶¶ 77-95 (pp. 38-46).) Realtime's allegations here identify specific exemplary Netflix products, allege that they utilize HEVC, and provide element-by-element infringement analysis, with explanations, citations, and quotation regarding specific portions of relevant documents. (*Id.* at ¶¶ 81-86.)[29]

Netflix concedes that the '298 patent relates to "decoding" (Mot. at 19) and also that HEVC Standard describes "the required operation of the decoder" (*id.*). Despite this, Netflix argues that the Complaint should be dismissed because "Realtime fails to allege that the '298 patent claims cover ***every possible*** implementation of the HEVC standard" (Mot. at 20). Netflix seeks to impose a standard that would not even be applicable in summary judgment. The Complaint alleges that Netflix performs each limitations and why. (D.I. 1 at ¶¶ 78-86.) Pleaded facts are taken as true and viewed in light most favorable to Realtime—i.e., that Netflix does perform what it purports is "optional" or "not always used."[30] Indeed, Netflix does not assert that its products do not implement "tiles," or otherwise dispute allegations about "tiles_enabled_flag." (*See* Mot. at 19-20.) But even if it did, that would merely present a factual issue inappropriate for ruling on a motion to dismiss under Rule 12(b)(6). Realtime's allegations are more than sufficient.

## IV.    NETFLIX'S ARGUMENT REGARDING INDIRECT INFRINGEMENT IS MERITLESS.

Netflix does not dispute post-filing indirect infringement allegations are sufficient; its argument here is solely about pre-suit indirect infringement. Netflix's attempt to carve up indirect infringement by time frame is simply a damages issue inappropriate for dismissal at this stage.

---

[29] The Complaint goes through each limitations of claim 1. (*See* D.I. 1 at ¶81 re: "receiving the video stream …," ¶82 re: "generating an output video…," ¶83 re: "receiving metadata …," ¶84 re: "determining the area in the composite …," ¶85 re: "decoding …," ¶86 re: "generating…")

[30] Netflix's argument that Realtime "cannot rely on the HEVC specification" (Mot. at 20) is based on misapplication of the law, as explained above. *Supra* at fn.27.

February 20, 2018

OF COUNSEL:

Marc A. Fenster
Brian D. Ledahl
Reza Mirzaie
C. Jay Chung
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
(310) 826-7474
Los Angeles, CA 90025-1031
mfenster@raklaw.com
bledahl@raklaw.com
rmirzaie@raklaw.com
jchung@raklaw.com

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Stephen B. Brauerman (No. 4952)
Sara E. Bussiere (No. 5725)
600 King Street, Suite 400
Wilmington, DE 19801
(302) 655-5000
sbrauerman@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Realtime Adaptive
Streaming LLC*